1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10   GREG PASSMORE, an individual, and    )   Civil No. 3:10-cv-2056-JAH (BGS)
     3D PIPELINE CORP., a California       )
11   corporation doing business as Passmore )  **ORDER DENYING DEFENDANTS'**
     Labs,                                 )   **MOTION TO DISMISS OR, IN**
12                                         )   **THE ALTERNATIVE, TRANSFER**
                          Plaintiffs,      )   **VENUE [DKT. NO. 18]**
13   v.                                    )
                                           )
14   CHRIS JOHNSON, an individual, and     )
     DERMA-MED TECHNOLOGIES                )
15   CORP., an Alabama corporation,        )
                                           )
16                        Defendants.      )
                                           )
17   _____  )

18                         **INTRODUCTION**

19        Before the Court is defendants Chris Johnson and Derma-Med Technologies

20   Corporation's ("Defendants") Motion to Dismiss Based on the Anticipatory Suit

21   Exception to the First-to-file Rule or, in the Alternative, to Transfer Venue under 28

22   U.S.C. § 1404(a) ("Motion"). (Dkt. No. 18.)  Plaintiffs Greg Passmore and 3D Pipeline

23   Corporation ("Plaintiffs") have filed an opposition to the Motion, (Dkt. No. 21), and

24   Defendants have filed a reply, (Dkt. No. 22).  After a careful review of the parties'

25   submissions, including accompanying declarations, exhibits, lodgments, and objections,

26   and for the reasons set forth below, the Court **DENIES** Defendants' Motion.

27                     **PROCEDURAL BACKGROUND**

28        Plaintiffs initiated this action in the Superior Court of the State of California,

10cv2056

County of San Diego ("San Diego Superior Court") on March 30, 2010, by filing a complaint that asserts four causes of action: (1) breach of contract, (2) negligent misrepresentation, (3) unjust enrichment, and (4) declaratory relief. (Dkt. No. 1 at 10.[1])

Plaintiffs' suit arises from an apparent dispute regarding performance under a contract the parties apparently entered into in September 2007. (Dkt. No. 1 at 13.) Pursuant to the contract, Plaintiffs were to develop a skin scanning device for Defendants and, in exchange, Defendants would give Plaintiffs $200,000.00 and a stock interest in defendant Derma-Med Technologies Corporation. (Id.) The written agreement contains the following provision:

> 27.   Any disagreements not covered in this Agreement that cannot be worked out between the parties will be handled through mediation. The parties [sic] agents shall select a mutually agreed upon state, excluding Alabama and California, in which to handle all legal proceedings.

(Dkt. No. 18-1 at 9; Dkt. No. 9 at 65.)

After Plaintiffs filed suit in the San Diego Superior Court, Defendants filed suit in the Texas District Court of Harris County on April 12, 2010. (Dkt. No. 18 at 19; Dkt. No. 21 at 5.) Thereafter, on May 7, 2010, Defendants moved to dismiss or stay the San Diego Superior Court action based on the above-referenced forum selection clause, but the San Diego Superior Court denied the motion, finding the forum selection clause unenforceable. (Dkt. No. 18 at 8; Dkt. No. 21 at 5.) On September 3, 2010, Defendants filed another lawsuit in the United States District Court for the Southern District of Alabama. (Dkt. No. 18 at 8; Dkt. No. 21 at 5.) Defendants then filed, in this Court, a Notice of Removal on October 1, 2010, and an additional Notice of Removal on November 23, 2010 – each seeking to remove the instant action from the San Diego Superior Court to this Court. (Dkt. Nos. 1, 9.) In response, Plaintiffs filed a Motion to Remand on October 7, 2010, and an additional Motion to Remand on December 6, 2010. (Dkt. Nos. 2, 12.) On March 21, 2011, Plaintiffs withdrew both motions to remand.

---

[1] For ease of reference, all page numbers cited herein refer to the CM/ECF page numbers of the documents indicated by docket entry number.

1  (Dkt. No. 17.)  And on April 18, 2011, Defendants filed the instant motion.  (Dkt. No.

2  18.)

3  <u>**BACKGROUND**</u>

4  It appears relations between the parties began to disintegrate during the latter half

5  of 2009.  (Dkt. No. 18 at 7; Dkt. No. 21-2 at 2.)  Thereafter, it appears the parties,

6  through counsel, attempted to agree upon a location (other than California or Alabama)

7  to mediate and litigate the dispute pursuant to the forum selection clause in the parties'

8  written agreement.

9  Counsel for Plaintiffs, Dyson, declares that, "after two months of correspondence

10  and telephone contacts" between him and counsel for Defendants, he received a letter

11  from Morris, Defendants' counsel, on February 5, 2010.  (Dkt. No. 21-2 at 2.)  In the

12  letter, Morris acknowledged the written agreement's forum selection clause, asked Dyson

13  to call to discuss the matter, and conveyed Defendants' desire to mediate in either

14  Mississippi or Florida.  (Dkt. No. 18-1 at 15.[2])  Dyson declares that he called Morris on

15  February 5, 2010, to discuss a mediation location but the two did not reach a resolution.

16  (Dkt. No. 21-2 at 2.)  Dyson then avers that, on February 22, 2010, he again discussed

17  the matter with Morris, suggesting the parties mediate in Austin, Texas.  (<u>Id.</u>)  On

18  February 24, 2010, Dyson received an email from Morris stating Defendants did not wish

19  to mediate in Texas but did want to mediate in New Orleans, Louisiana.  (Dkt. No. 18-1

20  at 20.[3])  Dyson declares he and Morris spoke again on February 24, 2010, but the two

21  were again unable to reach a resolution on the issue of a mediation location.  (Dkt. No.

22  21-2 at 2.)

23  On March 3, 2010, Dyson received a letter from Morris, in which Morris reiterated

24  Defendants' desire to mediate in New Orleans.  (Dkt. No. 18-1 at 16; Dkt. No. 21-2 at

25

26  [2] The parties agree the document at page 15 of Docket Number 18-1 is a true and accurate copy of the letter that Morris sent Dyson.  (Dkt. No. 18-1 at 2; Dkt. No. 21-2 at 2.)

27

28  [3] The parties agree the document at page 20 of Docket Number 18-1 is a true and accurate copy of the email that Morris sent Dyson.  (Dkt. No. 18-1 at 2; Dkt. No. 21-2 at 2.)

2.)  Dyson responded with an email stating he was not in the position to respond to Defendants' request to mediate in New Orleans but that he anticipated being able to respond within about a week.  (Dkt. No. 18-1 at 19.[4])  The parties appear to agree that Morris and Dyson did not speak again until at least March 30, 2010, at which point their versions of events diverge.

In an affidavit, Morris swears he "was informed by Mr. Dyson on March 30, 2010 that he would let [Morris] know [Plaintiffs'] position on litigation/mediation locale 'asap, but certainly within the week.'"  (Dkt. No. 22-2 at 4.)  And in defendant Chris Johnson's Declaration, Johnson restates Morris's account of the March 30, 2010, conversation as follows:

> Defendants [sic] agent called Plaintiffs [sic] agent to get an update on Defendants' counter offer of March 4, 2010 [regarding mediation in New Orleans].  Plaintiffs' agent stated in the conversation with Defendants [sic] agent that "he would call his client (Plaintiffs) today and get confirmation that a New Orleans, Louisiana mediation locale would work.  He then stated he would let me (Defendants [sic] agent) know something firm asap, but certainly within this week."

(Dkt. No. 18-1 at 2.)  Attached to Johnson's Declaration is a confirmatory email that Morris apparently sent to his client, Johnson, that states:

> After telling me how busy he has been, [Dyson] said that he would call his client [i.e., Plaintiffs] today and get confirmation that a New Orleans, Louisiana mediation locale would work.
>
> He then stated he would let me know something firm asap, but certainly within this week.

(Dkt. No. 18-1 at 17.)[5]

---

[4] The parties agree the document at page 19 of Docket Number 18-1 is a true and accurate copy of the email that Dyson sent Morris.  (Dkt. No. 18-1 at 2; Dkt. No. 21-2 at 2.)

[5] Plaintiffs object to Defendants' proffers of evidence regarding the purported March 30, 2010, conversation between Dyson and Morris.  (Dkt. No. 21 at 9.)  As the Court will explain below, however, even if the Court found that Dyson and Morris had the conversation that Defendants assert they had on March 30, 2010, Defendants still would not have demonstrated that an exception to the first-to-file rule applies. Accordingly, the Court makes no findings of fact with respect to the purported March 30, 2010, conversation and therefore overrules Plaintiffs' objections to Defendants' proffers on the issue as moot.

Plaintiffs filed their Complaint the same day Dyson purportedly told Morris he would "get confirmation that a New Orleans, Louisiana mediation locale would work" – March 30, 2010.  (Dkt. No. 1 at 7.)

## DISCUSSION

## I.    Legal Standard

Generally recognized doctrines of federal comity permit a district court to decline jurisdiction over an action when a complaint that involves the same parties and issues has already been filed in another district.  See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 185-86 (1952).  Under those circumstances, a district court may transfer, stay, or dismiss an action.  Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991).  The purpose of the first-to-file rule is to promote judicial efficiency and should not be taken lightly.  Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979); Alltrade, Inc., 946 F.2d at 625.

The first-to-file rule, however, should not be applied mechanically, but "rather is to be applied with a view to the dictates of sound judicial administration" with a goal toward avoidance of conflicting judgments and placement of an unnecessary burden on the federal judiciary.  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982);  Church of Scientology, 611 F.2d at 750.  Courts should consider three factors when deciding whether to apply the first-to-file rule: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues.  Alltrade, Inc., 946 F.2d at 625-26; Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994).

Absent compelling circumstances, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in a later-filed action. Ward, 158 F.R.D. at 648.  A court may determine the rule should not be applied based on equitable considerations, such as, where the first action was filed merely as a means of forum shopping or was filed in bad faith.  Alltrade, Inc., 946 F.3d at 627.  In that vein, "[a]nticipatory suits are disfavored because they are aspects of forum-shopping."  Id. at 628 (citing Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 n.3 (5th Cir.

1983)).

A suit is anticipatory if a plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent.  <u>Ward v. Follett Corp.</u>, 18 F.R.D. 645, 648 (N.D. Cal. 1994) (citing <u>Amerada Petroleum Corp. v. Marshall</u>, 381 F.2d 661 (5th Cir. 1967)); <u>see also</u> <u>Callaway Golf Co. v. Corp. Trade Inc.</u>, 2010 WL 743829, at *3-4 (S.D. Cal. Mar. 1, 2010) (applying the same standard); <u>see also</u> <u>Z-Line Designs, Inc. v. Bell'O Int'l, LLC</u>, 218 F.R.D. 663, 665-66 (N.D. Cal. 2003) (applying the same standard).

Another exception to the first-to-file rule applies if "the balance of convenience weighs in favor of the later-filed action."  <u>Ward</u>, 18 F.R.D. at 648 (citing <u>Alltrade</u>, 946 F.2d at 628.  This balancing analysis is analogous to the analysis undertaken to decide a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  <u>Callaway Golf Co.</u>, 2010 WL 743829, at *3 (citing <u>Med-Tec Iowa, Inc. v. Nomos Corp.</u>, 76 F. Supp. 2d 962, 970 (N.D. Iowa 1999); <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp 128, 133 (S.D.N.Y. 1994)).  Pursuant to 28 U.S.C. § 1404(a), even when venue is proper, the court has discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought."  Once a moving party demonstrates venue is proper in a proposed transferee court, courts in the Ninth Circuit weigh several "private and public interest factors" to determine whether transfer is appropriate: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses and availability of compulsory process, (4) ease of access to the evidence, (5) feasibility of consolidation of other claims, (6) familiarity of each forum with the applicable law, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.  <u>See</u> <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir. 1986); <u>see also</u> <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-99 (9th Cir. 2000), <u>cert. denied</u>, 531 U.S. 928 (2000).

Deciding whether and how to apply the first-to-file rule is within a district court's sound discretion.  <u>Alltrade</u>, 946 F.2d at 622.

10cv2056

1  ///

2  **II.     Analysis**

3       **A.      First-to-file Rule Applies**

4       Because the parties do not dispute the chronology of the two actions, the similarity

5  of the parties, or the similarity of the issues, the Court finds Plaintiffs have first-to-file

6  status.  Thus, the Court must only decide whether an exception to the first-to-file rule

7  applies such that this Court should dismiss, stay, or transfer the instant action.

8       **B.      The Bad Faith Exception Does Not Apply**

9       Defendants argue Plaintiffs acted in bad faith because they contributed only

10 "minimal efforts" in attempting to agree on a mediation location and because Dyson

11 purportedly told Morris he would call his clients (i.e., Plaintiffs) to obtain confirmation

12 that a New Orleans mediation location would work the same day Plaintiffs initiated this

13 action in the San Diego Superior Court.  (Dkt. No. 18 at 15.)

14      In opposition, Plaintiffs argue they "endeavored for months in good faith" in an

15 attempt to resolve the mediation location issue.  (Dkt. No. 21 at 8.)  Plaintiffs, however,

16 do not respond to Defendants' proffers regarding the purported March 30, 2010,

17 conversation between Morris and Dyson.  Instead, as noted above, Plaintiffs merely object

18 to Defendants proffers, claiming "the vast majority of 'evidence' submitted by Defendants

19 . . . is inadmissible and must be disregarded."  (<u>Id.</u> at 9.)  Plaintiffs note that nearly a

20 month passed between the time Morris and Dyson corresponded on March 3 and 4, 2010,

21 and when Plaintiffs filed suit in the San Diego Superior Court on March 30, 2010.  (<u>Id.</u>)

22 Lastly, Plaintiffs argue that, because the San Diego Superior Court ultimately found the

23 forum selection clause in the parties' September 2007 agreement to be unenforceable,

24 Plaintiffs did not act in bad faith by commencing suit in California despite the forum

25 selection clause's express bar on legal proceedings in either Alabama or California.  (<u>Id.</u>)

26 Plaintiffs argue that, moreover, Defendants themselves are now seeking transfer of this

27 case to a forum barred by the forum selection clause – the Southern District of Alabama.

28 (<u>Id.</u>)

10cv2056

In reply, Defendants assert Plaintiffs offered no evidence that they "endeavored for months in good faith" in an attempt to resolve the mediation location issue.  (Dkt. No. 22 at 6.)  Defendants further assert that no where in the correspondence between Dyson and Morris (i.e., the exhibits attached to Johnson's Declaration) did Dyson express dissatisfaction with the negotiation process such that Defendants would have been alerted to Plaintiffs' apparent intention to file suit in violation of the forum selection clause.  (Id. at 7.)  Regarding the month prior to Plaintiffs filing their Complaint, Defendants assert their delay in following up with Plaintiffs should not be held against Defendants because, per Dyson's March 4, 2010, email, Dyson was to inform Morris of Plaintiffs' decision regarding a New Orleans mediation location within approximately a week.   (Id.)  Defendants, however, do not explain the approximately twenty days that passed from March 11, 2010, (about one week after Dyson's March 4, 2010, email) to March 30, 2010, (the day Plaintiffs filed their Complaint) in which the parties apparently had no contact.  Lastly, Defendants assert that, with regard to filing suit in Alabama (i.e., a forum apparently barred by the forum selection clause), "Plaintiffs are responsible for Alabama becoming open as a potential forum due to their anticipatory California suit creating a precedent."  (Id. at 8.)

The Court finds that Defendants have not sufficiently demonstrated that, even accepting Defendants' proffers of evidence as true, the Court should disregard the first-to-file rule because Plaintiffs acted in bad faith.  There is no evidence that Plaintiffs promised to negotiate the mediation location issue for a specific period of time or indicated they would not file suit until the mediation location issue was resolved.  Neither is there evidence that Plaintiffs represented they would not challenge the forum selection clause's enforceability.  At most, Plaintiffs' counsel merely represented he would confirm Plaintiffs' position on Defendants' suggested mediation locations.

Further, nearly a month passed between the time Morris first followed up with Dyson regarding a New Orleans mediation location and Plaintiffs' filing of this action.  While Defendants claim they were waiting for Dyson's response, the approximately

twenty days that passed after Dyson was supposed to respond provided or should have provided some indication to Defendants that Plaintiffs were not actively engaged in resolving the mediation location issue.  Further, regardless of the purported phone conversation between Dyson and Morris on March 30, 2010, it appears Plaintiffs had already decided to file on or about March 30, 2010.  That is, it appears Plaintiffs were going to file on or about March 30, 2010, and Morris just happened to call Dyson that day.  In that regard, what Dyson may have said on March 30, 2010, is inconsequential.  This view is supported by the position Plaintiffs took in opposition to Defendants' Motion to Dismiss or Stay the San Diego Superior Court action, i.e., Plaintiffs considered the forum selection clause to be unenforceable.  Defendants could have reached a similar conclusion and filed in Alabama.[6]

In sum, Plaintiffs' conduct did not rise to the level of bad faith.  Accordingly, the Court finds this exception to the first-to-file rule inapplicable.

## C.   The Forum Shopping/Anticipatory Suit Exception Does Not Apply[7]

The Court finds Plaintiffs' suit was not anticipatory because Defendants have proffered no evidence that would demonstrate Plaintiffs filed suit upon receipt of specific, concrete indications that a suit by Defendants was imminent.  As discussed above, Defendants were proceeding under the assumption that the forum selection clause was enforceable and were therefore engaged in choosing a neutral location at which the parties could mediate and/or litigate their dispute.  Accordingly, the Court finds Plaintiffs' suit was not anticipatory and therefore finds the forum shopping exception inapplicable.

## D.   The Balance of Convenience Exception Does Not Apply

As a preliminary matter, the Parties do not dispute this action could have been brought in the Southern District of Alabama.  Thus, the Court will address the following

---

[6] The Court offers no opinion regarding the enforceability of the forum selection clause.

[7] Because anticipatory suits are "aspects of forum shopping," and because Defendants' arguments regarding the more general exception of forum shopping merely reiterate Defendants' arguments regarding anticipatory suits, the Court considers the two together.

10cv2056

factors to decide whether, on balance, the case should be transferred: plaintiff's choice of forum, convenience of the parties and witnesses and availability of compulsory process, ease of access to the evidence, feasibility of consolidation of other claims, familiarity of each forum with the applicable law, any local interest in the controversy, and the relative court congestion and time of trial in each forum.

### 1.   Plaintiffs' Choice of Forum

Ordinarily, a strong presumption exists in favor of a plaintiff's choice of forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  This presumption is overcome only when private and public interest factors "clearly" point toward an alternative forum. Id.  A plaintiff's choice of forum is entitled to only minimal consideration, however, where the operative facts have not occurred within the plaintiff's chosen forum and where the chosen forum has no particular interest in the parties or the subject matter.  Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968).

Plaintiffs argue the operative facts of their Complaint (e.g., contract formation and the development and modification of the skin scanning device) occurred within this forum and that this forum has a strong interest in Plaintiffs themselves, as plaintiff 3D Pipeline Corporation is a California corporation and plaintiff Greg Passmore is a California resident.  (Dkt. No. 21 at 13.)

Defendants argue Plaintiffs' choice of forum "bears no weight in Plaintiffs [sic] favor," as Defendants have demonstrated Plaintiffs' suit was anticipatory, involved forum shopping, and was filed in bad faith.  (Dkt. No. 22 at 9.)

As will be discussed below, the private and public interest factors do not clearly point toward the alternative forum.  Plaintiffs' argument that the operative facts of Plaintiffs' Complaint occurred in this forum and that this forum has an interest in the parties is supported by the allegations in Plaintiffs' Complaint.  Accordingly, the Court finds Plaintiffs' choice of forum is entitled to significant consideration.

### 2.   Convenience of the Parties and Witnesses

Defendants submit they have thirty-six non-party, non-employee witnesses that will

testify in support of Defendants' case.  (Dkt. No. 18-2 at 18, 46-48; Dkt. No. 22-1 at 6.)
Defendants provide only a few words describing the scope of each witness's testimony,
e.g., "System Claims," "Capital," and "Medical Device Standards."  (Dkt. No. 18-2 at 46-
48.)  Of those witnesses, apparently nineteen are located in Alabama, two in Florida, ten
in Georgia, two in Tennessee, two in California, and one in Arizona.  (Dkt. No. 18-2 at
46-48; Dkt. No. 22-1 at 6.)  Defendants predict twelve of the non-Alabama witnesses will
require compulsion to testify.[8]  (Dkt. No. 18-2 at 46-48; Dkt. No. 22-1 at 6.)

     Plaintiffs, on the other hand, submit they have fourteen non-party, non-employee
witnesses.  (Dkt. No. 21-3 at 2-3.)  Plaintiffs provide explanations regarding the role and
scope of testimony for each witness on their list.  (Id.)  Of those witnesses, apparently
nine are located in California, one in Texas, two in Nevada, and two in Kansas.  (Id.)  Of
those located outside of California, Plaintiffs predict the witness in Texas will require
compulsion.  (Id.)  Plaintiffs further anticipate that seven employee witnesses, each of
whom are located in California, will also testify.  (Id.)

     In opposition to Defendants' Motion, Plaintiffs contend that Defendants have
failed to provide any explanation as to why the testimony of Defendants' anticipated
witnesses will be relevant.  (Dkt. No. 21 at 11.)  Plaintiffs assert Defendants have listed
"every individual they could think of simply to up their witness number count."  (Id.)  In
support of this position, Plaintiffs note that Defendants list sixteen witnesses who will
testify regarding "System Claims," four witnesses will testify regarding "Medical Device
Standards," and ten witnesses will testify regarding "Capital."  (Id. at 13-14.)  Plaintiffs
assert they have never heard of over eighteen of Defendants' potential witnesses.  (Id.)

     In reply, Defendants do not address Plaintiffs' implication that the testimony of the
witnesses on Defendants' list would be cumulative.  Defendants merely reassert, among
other things, that sixteen witnesses will testify regarding "System Claims," four witnesses
will testify regarding "Medical Device Standards."  (Dkt. No. 22 at 10.)  Defendants also

_____

[8] Defendants do not provide sufficient information regarding the witnesses who will purportedly require compulsion to testify for the Court to assess Defendants' ability to compel their testimony.

10cv2056

assert Plaintiffs have inappropriately bolstered their list of witnesses for purposes of this Motion. (Dkt. No. 22 at 9-15.)

First, regarding the convenience of the parties, the Court recognizes that, in this day and age, the convenience of parties who are already engaged in interstate business, is entitled to less consideration than the convenience of witnesses who may have had little to do with the decision to transact interstate business. Further, a change of venue in this case would merely shift the apparent inconvenience from one party to the other. As such, this factor does not weigh in favor of either party. Therefore, the Court focuses its analysis on the convenience of the witnesses.

With respect to witnesses, the Court is not in the position, at this juncture, to decide factual disputes regarding the necessity or scope of testimony of each party's witnesses. Taking the parties' representations regarding their proposed witnesses at face value, however, the Court finds Defendants have not adequately explained why the testimony of each of their proposed witnesses would be necessary and, given the seemingly redundant nature of their proposed testimonies, not cumulative. Plaintiffs, on the other hand, have provided unique explanations regarding the role that each witness played in the project. Thus, given the record before the Court, the Court finds consideration of the convenience of the witnesses tips the balance in favor of Plaintiffs.

### 3.    Ease of Access to the Evidence

In their Motion, Defendants appear to argue a majority of the events giving rise to the allegations in Plaintiffs' Complaint must have taken place in Alabama and, therefore, the evidence supporting those allegations must also be in Alabama. (Dkt. No. 18 at 19-20.) Defendants assert this evidence would include Defendants' corporate documents, accounting records, board meeting minutes, telephone records, and the personal financial records of defendant Chris Johnson. (Id. at 20.) Defendants submit that all of the administrative work related to development of the skin scanning device, including marketing efforts, was conducted in Alabama. (Dkt. No. 18-2 at 21.) Defendant Chris Johnson also declares he modified the device's "interior/exterior connector interface" in

Alabama and shipped it to California.  (Id. at 22.)  Defendants also submit the only non-testimonial evidence they will need for their Southern District of Alabama case is the skin scanning device, which is currently stored at Plaintiffs' facilities in California, and which Defendants argue is not necessary to support the allegations in Plaintiffs' Complaint.  (Dkt. No. 18 at 20; Dkt. No. 18-2 at 18.)

Plaintiffs submit that development of the skin scanning device was undertaken exclusively in, and that the device has always been in, San Diego, California.  (Dkt. No. 21-3 at 4.)  Plaintiffs further submit that all modifications of the device were carried out in California and that the website, videos of the device, and work on the users manual were also undertaken in California.  (Id.)  Lastly, Plaintiffs submit that all meetings concerning the project and inspections of the device took place in California and that Plaintiffs have never traveled to Alabama to work on the project.  (Id. at 4-5.)

Additionally, Plaintiffs dispute that the activities Defendants point to in Plaintiffs' Complaint actually occurred in Alabama, thus negating Defendants' argument that a majority of the evidence must also be in Alabama.  (Dkt. No. 21 at 15.)  Plaintiffs note, for example, that Defendants claim the following activity, alleged in Plaintiffs' Complaint, occurred in Alabama: "by developing three completely different version of the scanner in an attempt to satisfy the moving target of features and specifications demanded by Defendants."  (Id.)  The development of three different versions of the device, assert Plaintiffs, was undertaken in California.  (Id.)  In response to Defendants' argument that the system is unnecessary for Plaintiffs' case, Plaintiffs assert the system will be required to support the allegations in their Complaint that they performed, to the extent possible, their obligations under the parties' agreement.

This Court finds this case centers on a contract dispute in which each party takes issue with various representations made, either in writing or in person, regarding performance under the contract.  There is evidence relevant to this action in both Alabama and California: administrative and financial documents in Alabama and documents related to the development and modification of the device along with the device itself in

California.

In sum, the Court finds the ease of access to the evidence in this case does not greatly tilt the balance of these factors in either party's favor.

### 4.       Feasibility of Consolidation of Other Claims

Because each party argues the other party's case should be (at least in the alternative) transferred for consolidation with their own, the Court finds this factor to be neutral.

### 5.       Familiarity of Each Forum with the Applicable Law

Because the parties agree this factor is neutral, (Dkt. No. 21 at 16; Dkt. No. 22 at 16), the Court does not consider it.

### 6.       Local Interest in the Controversy

Because each party's argument that their chosen forum has an interest in the controversy is based on their assertions that they are each citizens of their chosen forums, (Dkt. No. 21 at 17; Dkt. No. 22 at 18), the Court finds this factor to be neutral.

### 7.       Relative Court Congestion and Time of Trial in Each Forum

Defendants submit that, on average, it takes approximately twenty-nine months to conclude a civil jury trial in the Southern District of California, whereas it takes approximately eighteen months in the Southern District of Alabama. (Dkt. No. 22 at 17.)

Plaintiffs note that, due to Defendants' lawsuits in Texas and Alabama, along with Defendants' motions to dismiss, stay, or transfer this case in both the San Diego Superior Court and this Court, Defendants have already caused a significant delay in this case. (Dkt. No. 21 at 16-17.)

The Court first notes that this case has been ongoing in this Court for approximately thirteen months and, in total, for approximately twenty months. The Court finds that, while there may be, on average, an eleven-month difference in the time required to conclude a trial in this forum versus the Southern District of Alabama, the additional delay that would be required to transfer this case weighs in favor of proceeding in this forum.

In sum, considering all of the above factors, the Court finds the balance of factors does not weigh in favor of transferring this case to the District Court for the Southern District of Alabama.  Accordingly, the Court finds this exception to the first-to-file rule does not apply.  Having found that no exception to the first-to-file rule applies, the Court must **DENY** Defendants' Motion.

### E.      Motion to Transfer Venue

Defendants moved, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).  Because the analysis under the balance of convenience exception to the first-to-file rule mirrors the analysis under § 1404(a), and because the Court finds the convenience factors do not weigh in favor of transfer, Defendants' motion to transfer under § 1404(a) is **DENIED**.

## CONCLUSION AND ORDER

Based on a careful review of the parties' submissions, and for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion, (Dkt. No. 18), is **DENIED**.[9]  The case shall proceed in due course.


Dated:  November 28, 2011

_____
HON. JOHN A. HOUSTON
United States District Judge


cc:  Magistrate Judge Skomal

---

[9] The Court notes that Plaintiffs objected to other statements made in the declarations and affidavits filed in support of Defendants' Motion. Because the Court did not rely on those statements in deciding this Motion, the Court overrules Plaintiffs' remaining objections as moot.